## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROSEMARY HANSEN**, <br><br> Plaintiff, <br><br> *v.* <br><br> **SPEEDWAY, et al.**, <br><br> Defendants. | **CIVIL ACTION** <br><br> **NO. 19-3174-KSM** |

## MEMORANDUM

**MARSTON, J.**                                                                 **January 26, 2021**

Plaintiff Rosemary Hansen alleges that Defendants Speedway #06805 and Speedway, LLC (collectively, "Speedway") negligently placed a defective floor mat at the entrance to one of their convenience stores, causing her to fall and injure herself. (Doc. No. 1.) Two weeks after Speedway filed its Motion for Summary Judgment, it filed this Motion to Enlarge the Time to Complete Discovery and Compel a Rule 35 Examination of Hansen. (Doc. No. 23.) Speedway claims that it should be allowed more time to complete discovery and conduct this examination because Speedway did not learn until September 8, 2020, approximately a month prior to the close of discovery, that Hansen had undergone an independent medical evaluation ("IME") by a plastic surgeon. (*Id.* at ¶ 6.) Speedway asserts that it could not find a plastic surgeon to conduct its own examination in time to comply with the expert discovery deadline. (*See id.* at ¶¶ 7–8.) Hansen opposes Speedway's motion, on the grounds that it is untimely and that she will be prejudiced if Speedway is now allowed to perform an IME. (*See* Doc. No. 27.) For the reasons discussed below, Speedway's motion will be granted with certain limitations.

I.

It is undisputed that Hansen tripped and fell at Speedway convenience store #06805 on December 7, 2017. (*See* Doc. No. 23 at p. 2; Doc. No. 27 at p. 1.) The parties agree on little else. This present discovery dispute was precipitated by ambiguity about the extent to which Hansen has recovered from her fall.

Speedway took Hansen's deposition on September 1, 2020. During her deposition, Hansen stated that she had recovered from her fall by May or June of 2018. (Hansen Dep. Tr. at 70:20–71:2.) After the deposition, Speedway's counsel advised Hansen's counsel that given Hansen's testimony that she was recovered and her last medical treatment was over two years ago, Speedway did not need Hansen to undergo an IME. (Doc. No. 23 at pp. 5–6.) In response, Hansen's counsel stated that Hansen still had scarring from her fall. (Doc. No. 23 at ¶ 5; *see also* Draft Discovery Hr'g Tr. at 9:5–9; *id.* at 13:11–14.) However, Hansen's counsel did not disclose that Plaintiff had already undergone an IME by Dr. Nathaniel Holzman and that Plaintiff would be turning over Dr. Holzman's expert report in compliance with the Court's deadlines.[1]

On the deadline for expert reports, September 8, 2020, Hansen's counsel served Dr. Holzman's report on Speedway. (Doc. No. 23-2.) The report opined that "the trauma of the right lower extremity has resulted in a permanent scar that can exacerbate [Plaintiff's] underlying chronic edema and thus effect [sic] ambulation." (*Id.* at pp. 5–6). In light of this expert's opinion, which ran counter to Plaintiff's assertion during her deposition that she had recovered from her fall by approximately May or June 2018, Speedway decided it wanted to move forward

---

[1] During oral argument, Plaintiff's counsel stated that he had not reviewed their expert's report, dated August 31, 2020, prior to Plaintiff's deposition on September 1, 2020. (Draft Discovery Hr'g Tr. at 9:10–14.) Further, counsel advised that he did not have any discussions with Dr. Holzman regarding his evaluation and opinion before reviewing the final report *after* Plaintiff was deposed. (*Id.* at 9:15–18.)

with its own IME.[2] (*See* Doc. No. 23 at p. 6.)

However, Speedway's counsel waited until October 13, 2020 to contact Plaintiff's counsel and inform him that Speedway wanted Hansen to undergo an IME by Dr. Paul Glat.[3] (Doc. No. 23-2 at p. 2.) Plaintiff's counsel objected as fact and expert discovery had closed a week earlier, on October 6, 2020. (Doc. No. 16 at ¶¶ 3–4.) The parties went through several rounds of email exchanges and phone calls in an attempt to come to an agreement that would allow Speedway's proposed IME, but these discussions were ultimately unsuccessful. (*See* Doc. No. 23 at pp. 6–8; Doc. No. 27 at pp. 11–12.)

On November 2, 2020, Speedway filed its Motion to Extend the Time for Discovery and Compel Hansen to Undergo an Independent Medical Exam. (Doc. No. 23.) Hansen filed her opposition on November 9, 2020. (Doc. No. 27.) On January 21, 2021, the Court held a hearing on this motion, as well as a subsequent (and unrelated) motion to compel filed by Hansen.

II.

Rule 35 of the Federal Rules of Civil Procedure allows the Court to "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). The Court may only issue such an order upon the motion of one of the parties, and for good cause shown. Fed. R. Civ. P. 35(a)(2)(A). The decision whether to grant a motion to compel a Rule 35 examination is

---

[2] At the hearing on this Motion, Hansen's attorney asserted that there was no contradiction between Hansen's deposition testimony and Dr. Holzman's report. (Draft Discovery Hr'g Tr. at 17:22–18:6.) Perhaps Hansen's attorney is correct, and the two descriptions of Hansen's condition do not contradict one another. But we cannot find Speedway's interpretation—that Hansen said she was recovered from her fall and Dr. Holzman said she was not—unreasonable based on the plain language used in both statements.

[3] During oral argument, Speedway's counsel acknowledged that he should have notified Hansen's attorneys that he wanted an IME as soon as he reviewed Dr. Holzman's report. (Draft Discovery Hr'g Tr. at 5:18–22.)

committed to the sound discretion of the district court. *Shirsat v. Mut. Pharm. Co., Inc.*, 169 F.R.D. 68, 70 (E.D. Pa. 1996). The Supreme Court has counseled that "Rule 35 . . . requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause.'" *Schlagenhauf v. Holder*, 379 U.S. 104, 118–19 (1964).

A person's condition is "in controversy" when there is a real and genuine dispute about it. *Id.* at 118; *Kuminka v. Atlantic County New Jersey*, 551 F. App'x 27, 29 (3d Cir. 2014). A plaintiff can put her condition in controversy by claiming damages related to it. *See Kuminka*, 551 F. App'x at 29–30; *Prather v. Prudential Fox & Roach*, Civil Action No. 07-1264, 2008 WL 11431050, at *2 (E.D. Pa. Mar. 27, 2008). Alternatively, a plaintiff's condition can be in controversy if the defendant raises it as part of a defense. *Womack v. Stevens Transp., Inc.*, 205 F.R.D. 445, 447 (E.D. Pa. 2001).

Whether good cause exists "turns on relevance and need for the [Rule 35 examination]"; the operative question is whether "the examination could adduce specific facts relevant to the cause of action and is necessary to the defendant's case." *Id.* Rule 35 examinations are an important aspect of discovery when the case turns on a party's physical or mental condition, particularly when, without an independent examination, a party is restricted to mere cross examination of the other side's witnesses. *Id.* Courts in this district have held that independent examinations are necessary because mere cross examination is an "insufficient test of truth." *Id.*

When Rule 35 motions are made after the time period for discovery has ended, they implicate Rule 16, which instructs that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also Ewing v. Cumberland County*, Civil

4

No. 09–5432 (JBS/AMD), 2014 WL 3974159, at *7 (D.N.J. July 16, 2014); *Freeman v. Kmart Corp.*, No. 2005-CV-0074, 2009 WL 995626, at *1 (D.V.I. Apr. 14, 2009). A critical factor in the Rule 16 "good cause" analysis is "the diligence of the party seeking the extension." Fed. R. Civ. P. 16(b) advisory committee's note to 1983 amendment; *see also Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) ("[W]hether 'good cause' exists under Rule 16(b)(4) depends in part on a plaintiff's diligence.").

Even if good cause does not exist under Rule 16, if the result of not granting Speedway's Motion is to exclude "critical evidence" that could be provided by Speedway's expert, we must consider the so-called *Pennypack* factors in evaluating whether to allow Speedway to conduct an IME. *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 297–98 (3d Cir. 2012); *Ewing*, 2014 WL 3974159, at *7. Those factors are: "(1) 'the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified' or the excluded evidence would have been offered; (2) 'the ability of that party to cure the prejudice'; (3) the extent to which allowing such witnesses or evidence would 'disrupt the orderly and efficient trial of the case or of other cases in the court'; (4) any 'bad faith or willfulness in failing to comply with the court's [scheduling] order'; and (5) the importance of the excluded evidence." *ZF Meritor, LLC*, 696 F.3d at 298 (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977)).

### III.

We first address whether Speedway has demonstrated good cause under Rule 16 for its delay in filing its Motion, given that it waited until after the expiration of discovery and expert deadlines to notify Hansen that because of Dr. Holzman's report, it had changed its mind and

5

wanted to move forward with a Rule 35 examination.[4]

Speedway has not been diligent in complying with the discovery deadlines in this case. (*See* Doc. No. 16.)  Diligence requires a party to timely act on information that it has in its possession.  *See Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 279–80 (E.D. Pa. 2010).  For this reason, courts are especially unlikely to extend the case management deadlines and grant a motion to compel a Rule 35 examination when, as here, a party had ample notice that a person's mental or physical condition was at issue and nonetheless delayed in filing their motion.  *See Miles v. Saldutte*, Civil Action No. 10-1135, 2012 WL 1593155, at *2 (W.D. Pa. May 4, 2012); *see also Freeman*, 2009 WL 995626, at *1–2.

Hansen pleaded in her Complaint that she "suffered *and continues to suffer* from excruciating and agonizing physical pain, discomfort, frustration, embarrassment, loss of enjoyment of life's pleasures, and an inability to attend to usual and daily activities in the past, *and may continue into the future*" as a result of her injuries.  (Doc. No. 1-1 at ¶ 27 (emphasis added).)  Thus, Speedway was arguably on notice as far back as June of 2019 that Hansen intended to introduce evidence that her injury had ongoing ill effects.  *See Miles*, 2012 WL 1593155, at *2.  Speedway acknowledged that Hansen's current and future physical condition was at issue explicitly in the joint status report the parties filed on April 14, 2020 (*see* Doc. No. 12 at p. 2 ("[P]laintiff will have to undergo a Rule 35 exam.")), and implicitly by its extensive questioning about Hansen's physical condition during her deposition.  *See Miles*, 2012 WL 1593155, at *2.

---

[4] In its Motion to Compel, Speedway relies exclusively on *Jagger v. Reynolds Food Packaging*, a Western District of Pennsylvania case in which the court found good cause under Rule 35 and granted a motion to compel examination of a plaintiff who had put his medical condition at issue. Civil Action No. 11-1134, 2012 WL 6087482, at *1–2 (W.D. Pa. Dec. 6, 2012).  In important respects, however, *Jagger* is inapposite.  That case did not deal with whether an *untimely* motion to compel a Rule 35 examination ought to be granted, and includes no discussion of Rule 16's good cause requirement.

We accept Speedway's assertion that following Hansen's September 1, 2020 deposition Speedway no longer believed it needed a Rule 35 examination. Given the discussion between counsel following Hansen's testimony on September 1, we find disappointing Plaintiff's counsel's failure, at a minimum, to mention that Plaintiff had undergone an IME and the expert report would be forthcoming. However, upon receipt of Dr. Holzman's report on September 8, 2020, Speedway still had approximately a month to discuss the issue with Plaintiff's counsel and file a timely motion to compel. Yet, Speedway's counsel waited until *after* the close of expert and fact discovery to even broach the subject with Hansen's counsel. There is no excuse for this delay. *See Ewing*, 2014 WL 3974159, at *7 (finding a lack of diligence where a party waited three weeks to file—eight days *before* the close of expert discovery—a motion to compel a Rule 35 exam); *Freeman*, 2009 WL 995626, at *2 (denying a motion to compel a Rule 35 examination where discovery had been closed and expert discovery and dispositive motion deadlines had passed).

Speedway attempts to excuse its delay by claiming it is rare to require a plastic surgeon to perform an IME, and during the ongoing COVID-19 pandemic Speedway had difficulty finding an expert to conduct the examination in a timely fashion. (Doc. No. 23 at p. 9 & n.1.) Yet, these excuses fail to explain why Speedway did not immediately notify the Court of these difficulties *prior* to the expiration of the discovery deadlines.

First, the fact that having a plastic surgeon as an independent medical examiner is rare—not to mention Speedway's counsel's assertion that "this was the first time in 32 years of practice that [he] had to have an IME conducted by a plastic surgeon"—should have put Speedway on notice that it might not be able to have the examination performed within the remaining discovery time period. (*Id.*) Shortly after receiving Dr. Holzman's report, or at least prior to the

7

expiration of the discovery deadlines, a diligent attorney would have notified opposing counsel of his renewed need for a Rule 35 examination, as well as the potential necessity for an extension of the discovery deadlines.  The rarity of IMEs conducted by plastic surgeons is irrelevant to Speedway's failure to timely file a Rule 35 motion once it became apparent that such a motion was necessary.  *See Ewing*, 2014 WL 3974159, at *7.

Second, as for COVID-19, the Court understands that the pandemic has created challenges with discovery and in fact previously extended deadlines in the instant case due to COVID-19 difficulties.  (Doc. No. 14 at p. 1 n.1 ("The Court has granted the current request given the extraordinary circumstances surrounding the Covid-19 pandemic."); *see* Doc. No. 16 at p. 1 n.1 ("The Court advises the parties that there will be no further continuances, and accordingly, strongly urges the parties to conduct depositions telephonically or electronically.").)  However, by September 8, the nation had been in the grip of the pandemic for almost six months.  It can hardly have come as a surprise to Speedway that the pandemic would make finding a physician to perform an IME difficult.  This gave Speedway all the more reason to involve Hansen and the Court in the process of scheduling its IME as early as possible, particularly with the discovery deadline looming.  Yet, inexplicably, Speedway waited, and we cannot find that Speedway has demonstrated circumstances sufficient to constitute good cause pursuant to Fed. R. Civ. P. 16(b)(4).  *See Ewing*, 2014 WL 3974159, at *7.

## IV.

Although Speedway has failed to show good cause under Rule 16, we must also consider the effect denying Speedway's motion would have under the standard governing exclusion of experts.  We must do so because denying Speedway's motion would have the "practical effect of . . . exclu[ding] . . . certain expert testimony."  *Id.*; *see also ZF Meritor, LLC*, 696 F.3d at 297–

8

98. We must evaluate: "[1] the prejudice to the nonmoving party, (2) the ability to cure the prejudice, (3) any disruption of the orderly and efficient trial of the case, (4) any bad faith or willfulness of the moving party, and (5) the importance of the evidence to be excluded." *Ewing*, 2014 WL 3974159, at *7 (alterations adopted and internal quotation marks omitted). Of these, "importance of the evidence is . . . the most significant factor." *ZF Meritor, LLC*, 696 F.3d at 298.

First, we observe that given the ongoing COVID-19 pandemic, civil jury trials have yet to resume in the Eastern District of Pennsylvania, and therefore there is no pending trial date at this time.[5] We do find that Speedway's counsel was less than diligent in pursuing an IME, and was inexcusably negligent in failing to abide by the Court's scheduling orders. However, it is uncontested that aspects of Hansen's medical condition are at issue in this case, and therefore, that there is good cause for a Rule 35 examination. During the hearing on Speedway's Motion, Hansen's attorneys argued that, were the Court to grant the Motion, Speedway should be limited to inquiring only into the future impact of Hansen's injuries. (*See* Draft Discovery Hr'g Tr. at 18:14–20.) Hansen has put her future condition at issue by claiming damages for injuries "which are or may be permanent in nature." (Doc. No. 1-1 at p. 13.) *See Kuminka*, 551 F. App'x at 29–30. Additionally, to the extent Dr. Holzman claims in his report that Hansen's injury *currently* impacts her ability to walk (*see* Doc. No. 23-2 at p. 6), Hansen placed her condition at issue by her own deposition testimony that she had recovered by May or June of 2018 (Hansen Dep. Tr. at 70:20–71:2).

Plaintiff argues that she would be incurably prejudiced if Speedway were allowed to

---

[5] The Court noted during oral argument that the Eastern District of Pennsylvania is hopeful that a limited number of civil jury trials will resume in mid to late February and as such a trial date may be scheduled for early spring for this case. (Draft Discovery Hr'g Tr. at 8:24–9:3.)

9

identify an expert witness after the close of discovery (Doc. No. 27 at p. 16.)  At oral argument, Hansen's attorney also asserted that Plaintiff would be prejudiced if Speedway's expert had the advantage of being able to review Dr. Holzman's report prior to conducting his own IME.  (Draft Discovery Hr'g Tr. at 15:8–13.)  Were we to allow Speedway's expert to produce a plenary expert report, these concerns could be warranted.  However, because here we will restrict Speedway's IME to rebutting Dr. Holzman's assertions that Hansen's injuries are irremediable and are currently impacting her or could impact her in the future, we find that Hansen will not be unduly prejudiced if the Court grants Speedway's motion.[6]  *See Colon*, 2005 WL 1277941, at *2.

      We conclude that Speedway would be severely prejudiced if it were not given the opportunity to rebut Dr. Holzman's assertions that Hansen's injuries may continue to affect her in the future and are essentially irremediable.  These assertions could drastically influence a fact finder's analysis of both the existence and quantum of Hansen's damages.  Speedway's proposed Rule 35 examination is thus "highly relevant" to the outcome of this case, and Speedway will be prejudiced if it cannot perform it.  *King v. Mansfield Univ. of Pa.*, Civil No. 1:11-CV-1112, 2014 WL 563323, at *2 (M.D. Pa. Feb. 11, 2014); *see also Ewing*, 2014 WL 3974159, at *7 (allowing a non-diligent defendant to perform a Rule 35 examination because to rule otherwise would result in the exclusion of critical evidence).  This is particularly true given that Speedway would be restricted to cross examining Hansen and Dr. Holzman, and cross examination is an "insufficient test of truth."  *Womack*, 205 F.R.D. at 447.

      Speedway has failed to show good cause for its failure to comply with our discovery deadlines.  However, because we find that Hansen's condition is in controversy, that Hansen would not be unduly prejudiced if Speedway is permitted to conduct a limited IME, and that

---

[6] Speedway's attorney agreed that its expert would not probe issues, such as causation, that would fall outside the scope of a rebuttal report.  (*See* Draft Discovery Hr'g Tr. at 16:20–17:19.)

Speedway would be highly prejudiced if denied the opportunity to perform the Rule 35 examination, we will grant Speedway's motion.  *See King*, 2014 WL 563323, at *2; *Ewing*, 2014 WL 3974159, at *7.  Speedway's expert will be restricted to rebutting Dr. Holzman's assertions that Hansen's scarring from her fall impacts her, will impact her in the future, and are irremediable (items number 6 and 7 of Dr. Holzman's report).  With these limitations, Speedway's Motion is granted.

    An appropriate order follows.